## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In re:<br>Richard Davis and<br>Jeanette Davis<br>         Debtors. | ) ) ) ) ) ) | Bankruptcy Case No. 18-60241<br>Chapter 7<br>Hon. Laura K. Grandy |
| In re:<br>Kristyn Curry<br>         Debtor. | ) ) ) ) ) ) | Bankruptcy Case No. 18-60382<br>Chapter 7<br>Hon. Laura K. Grandy |
| In re:<br>Terry Dedmon and<br>Khristie Gable<br>         Debtors. | ) ) ) ) ) ) | Bankruptcy Case No. 19-30087<br>Chapter 7<br>Hon. Laura K. Grandy |
| In re:<br>Kerri Sierra-Scott<br>         Debtor. | ) ) ) ) ) ) | Bankruptcy Case No. 19-30157<br>Chapter 7<br>Hon. Laura K. Grandy |
| In re:<br>Marc Clark and<br>Kelly Clark<br>         Debtors. | ) ) ) ) ) ) | Bankruptcy Case No. 19-30720<br>Chapter 7<br>Hon. Laura K. Grandy |
| In re:<br>Ariel Mounce<br>         Debtor. | ) ) ) ) ) ) | Bankruptcy Case No. 19-30856<br>Chapter 7<br>Hon. Laura K. Grandy |
| In re:<br>Harold Lalumondiere and<br>Lisa Lalumondiere<br>         Debtors. | ) ) ) ) ) ) | Bankruptcy Case No. 19-30905<br>Chapter 7<br>Hon. Laura K. Grandy |
| In re:<br>Jason Turner<br>         Debtor. | ) ) ) ) ) ) | Bankruptcy Case No. 19-30993<br>Chapter 7<br>Hon. Laura K. Grandy |
| In re:<br>Donald Lankford<br>         Debtor. | ) ) ) ) ) ) | Bankruptcy Case No. 19-31097<br>Chapter 7<br>Hon. Laura K. Grandy |
| In re:<br>Megan Beckemeyer<br>f/k/a Megan Tanner<br>         Debtor. | ) ) ) ) ) ) ) | Bankruptcy Case No. 19-31273<br>Chapter 7<br>Hon. Laura K. Grandy |

Continued to Page 2

| | | |
|---|---|---|
| In re:<br>David Miller<br>                    Debtor. | )<br>)<br>)<br>)<br>) | Bankruptcy Case No. 19-31377<br>Chapter 7<br>Hon. Laura K. Grandy |
| In re:<br>Jamie Brucker and<br>Angela Brucker<br>                    Debtors. | )<br>)<br>)<br>)<br>) | Bankruptcy Case No. 19-31474<br>Chapter 7<br>Hon. Laura K. Grandy |
| In re:<br>Arnold Edwards and<br>Tracy Edwards<br>                    Debtors. | )<br>)<br>)<br>)<br>) | Bankruptcy Case No. 19-31476<br>Chapter 7<br>Hon. Laura K. Grandy |
| In re:<br>Rachael Hohensee<br>                    Debtor. | )<br>)<br>)<br>)<br>) | Bankruptcy Case No. 19-31537<br>Chapter 7<br>Hon. Laura K. Grandy |
| In re:<br>Tiffany Cannon<br>                    Debtor. | )<br>)<br>)<br>)<br>) | Bankruptcy Case No. 19-31596<br>Chapter 7<br>Hon. Laura K. Grandy |
| In re:<br>Clint Jones and<br>Pamela Jones<br>                    Debtors. | )<br>)<br>)<br>)<br>) | Bankruptcy Case No. 19-31602<br>Chapter 7<br>Hon. Laura K. Grandy |
| In re:<br>Sandra Dennis<br>                    Debtor. | )<br>)<br>)<br>)<br>) | Bankruptcy Case No. 19-40180<br>Chapter 7<br>Hon. Laura K. Grandy |
| In re:<br>Thomas Schnack and<br>Christy Schnack<br>                    Debtors. | )<br>)<br>)<br>)<br>) | Bankruptcy Case No. 19-40714<br>Chapter 7<br>Hon. Laura K. Grandy |
| In re:<br>Ross VanDeventer and<br>Mary VanDeventer<br>                    Debtors. | )<br>)<br>)<br>)<br>) | Bankruptcy Case No. 19-60152<br>Chapter 7<br>Hon. Laura K. Grandy |
| In re:<br>Chelsea Potter<br>                    Debtor. | )<br>)<br>)<br>)<br>)<br>) | Bankruptcy Case No. 19-60216<br>Chapter 7<br>Hon. Laura K. Grandy |

Continued on Page 3

| | | |
|---|---|---|
| In re:<br>Wendell Haws<br><br>              Debtor. | ) ) ) ) ) ) | Bankruptcy Case No. 19-60222<br>Chapter 7<br>Hon. Laura K. Grandy |
| In re:<br>Albert Johnson, II<br><br>              Debtor. | ) ) ) ) ) ) | Bankruptcy Case No. 19-60320<br>Chapter 7<br>Hon. Laura K. Grandy |
| In re:<br>Boyce Burns and<br>Amanda Burns<br><br>              Debtors. | ) ) ) ) ) ) | Bankruptcy Case No. 19-60349<br>Chapter 7<br>Hon. Laura K. Grandy |
| In re:<br>Teresa Reynonds<br><br>              Debtor. | ) ) ) ) ) ) | Bankruptcy Case No. 19-60357<br>Chapter 7<br>Hon. Laura K. Grandy |
| In re:<br>Jeff Thulin and<br>Julie Thulin<br><br>              Debtors. | ) ) ) ) ) ) | Bankruptcy Case No. 20-30103<br>Chapter 7<br>Hon. Laura K. Grandy |
| In re:<br>Peggy Chapman<br><br>              Debtor. | ) ) ) ) ) ) | Bankruptcy Case No. 20-30177<br>Chapter 7<br>Hon. Laura K. Grandy |
| In re:<br>Angie McClatchery<br><br>              Debtor. | ) ) ) ) ) ) | Bankruptcy Case No. 20-30186<br>Chapter 7<br>Hon. Laura K. Grandy |
| In re:<br>Micah Scruggs and<br>Shaune Scruggs<br><br>              Debtors. | ) ) ) ) ) ) | Bankruptcy Case No. 20-30203<br>Chapter 7<br>Hon. Laura K. Grandy |
| In re:<br>George Wise<br><br>              Debtor. | ) ) ) ) ) ) | Bankruptcy Case No. 20-30346<br>Chapter 7<br>Hon. Laura K. Grandy |
| In re:<br>Betty Corey<br><br>              Debtor. | ) ) ) ) ) ) ) | Bankruptcy Case No. 20-40036<br>Chapter 7<br>Hon. Laura K. Grandy |

Continued to Page 4

| | |
|---|---|
| In re:<br>Brandi Hill<br>            Debtor. | Bankruptcy Case No. 20-40166<br>Chapter 7<br>Hon. Laura K. Grandy |
| In re:<br>Jason Lindsey and<br>Andrea Lindsey<br>            Debtors. | Bankruptcy Case No. 20-40179<br>Chapter 7<br>Hon. Laura K. Grandy |
| In re:<br>Charles Crow and<br>Annette Crow<br>            Debtors. | Bankruptcy Case No. 20-40187<br>Chapter 7<br>Hon. Laura K. Grandy |
| In re:<br>Cullen Bond<br>            Debtor. | Bankruptcy Case No. 20-40199<br>Chapter 7<br>Hon. Laura K. Grandy |
| In re:<br>Darryl Kulic<br>            Debtor. | Bankruptcy Case No. 20-40288<br>Chapter 7<br>Hon. Laura K. Grandy |
| In re:<br>John Smiley<br>            Debtor. | Bankruptcy Case No. 20-60035<br>Chapter 7<br>Hon. Laura K. Grandy |

## DECLARATION OF RYAN M. GALLOWAY

Ryan M. Galloway, pursuant to 28 U.S.C. § 1746, hereby declares as follows:

1. I am an adult of sound mind. I am the Associate General Counsel and Vice President of Legal Delivery of Deighan Law LLC, an Illinois limited liability company, which does business as Upright Law LLC (hereinafter "UpRight Law" or the "Firm") in the State of Illinois. UpRight Law was formerly known as Law Solutions Chicago LLC. Because of my employment and my position, I have knowledge of the business practices of UpRight Law, its client systems, and its financial information.

2. I am an attorney licensed to practice law in the State of Illinois. I am admitted in the Northern District of Illinois, the Central District of Illinois, and the Southern District of Illinois.

4

I am currently "inactive" in the Southern District of Illinois. I have personal knowledge of the facts set forth in this Declaration, and if called upon to testify, I would competently testify to the same.

3. I have reviewed the expenses incurred by the Firm in this and other bankruptcy cases that the firm has filed in the Southern District of Illinois in which the Bankruptcy Court (hereinafter "the Bankruptcy Court") has *sua sponte* issued Notices of hearing "to consider and act upon the following: Disclosure of Compensation of Attorney filed by Debtor..." (hereinafter "Notice" or "Notices.") A list of these matters in which the Bankruptcy Court has issued Notices is attached to the Motion to Withdraw the Reference as Exhibit A.

4. The Bankruptcy Court began issuing these Notices in Chapter 7 cases filed by UpRight Law approximately two years ago, although the frequency of the issuance of these notices has increased over time. None of these cases had contested matters associated with them at the time the Bankruptcy Court issued these Notices. To date, only one of them has a contested matter associated with it. That matter is an adversary complaint that was filed relating to a different bankruptcy case (*In re Potter*, No. 19-60216) on September 15, 2020, nearly two months after UpRight Law and its client filed motions to close in that case. (*See* Complaint filed in No. 20-06008-lkg). It was filed on the eve of the hearing on the motions to close.

5. Based on statements made in transcripts of various court hearings in matters in which Notices were issued, and in various pleadings filed by the United States Trustee ("UST") in these matters, I understand that the Bankruptcy Court intended to have these Notices serve as a mechanism to direct the UST to undertake investigations of UpRight Law. Based on these transcripts and various Motions for Examinations pursuant to Federal Rule of Bankruptcy Procedure Rule 2004 ("Rule 2004") filed by the UST, it appears that Bankruptcy Court's primary

directive is for the UST to investigate the process by which UpRight Law provided services to these clients.

6. The Bankruptcy Court's issuance of Notices in these cases has generally triggered a series of procedures that have resulted in obligations and expenses for the Firm and its clients. I have described these procedures below:

   a. The Bankruptcy Court typically holds a status hearing on the Notice. One of the results of these hearings has been for the Bankruptcy Court to order UpRight Law to produce an "Itemization of Attorney Fees." The Court has been informed that UpRight Law charges flat fees in its Chapter 7 representations, including the cases at issue in which the Court has issued Notices. For the cases in which the Bankruptcy Court has issued Notices, pursuant to the flat fee arrangement, the client has not been billed on an hourly basis. Accordingly, a true itemization would merely entail the Statement of Attorney Compensation for Debtor that is filed in every case as a matter of course, which reflects the flat attorney fee charged for the representation. Nevertheless, UpRight Law has been effectively tasked with constructing a document akin to an accounting of services that provides the identities of the people who completed the work, along with a brief description of their professional and educational backgrounds, and their current job status with UpRight Law.

   b. In each case in which the Bankruptcy Court has issued a Notice, the UST then typically issues motions for Rule 2004 examinations. These motions generally purport to seek the examinations of the debtor and the attorney of record in every case. In some instances, the UST has also sought the examination of

UpRight Law employees. The UST has never sought the examination of any creditor, lienholder, potential transferee, or any other person unaffiliated with UpRight Law. All of the examinations sought have been confined to UpRight Law's attorneys, employees, and clients. Over UpRight Law's objections, the Court has not yet denied a single motion for a Rule 2004 examination sought by the UST, despite the extremely large volume of examinations already sought. To date, the UST has sought more than 90 Rule 2004 examinations.

c. In addition to allowing the Rule 2004 examinations sought by the UST, the Court also has ordered UpRight Law to produce documents. Subject to the attorney-client privilege and work product doctrines, that production typically includes:

   i. A detailed redaction log[1];
   ii. Any correspondence between the debtor and UpRight Law including emails and written descriptions of calls;
   iii. The retention agreement;
   iv. Any disclosures and consent forms;
   v. A copy of the debtor's case file with UpRight Law including the payment history and notes;
   vi. The intake information and subsequent interview forms;
   vii. Document lists for the client to produce to the attorney;

---

[1] The redactions and the log recording them, alone, can easily require more than an hour of outside counsel, in-house counsel, and paralegal time on every case. This does not include any time for the compilation of the documents to be redacted.

   viii. Any internal correspondence to and/or from UpRight Law partners and/or employees; and

   ix. All of the documentation that the debtor gave to UpRight Law for the purpose of preparing the bankruptcy petition, statements, and schedules or the § 341 meeting of creditors. This can include, but is not limited to, bills, bank statements, pay advices, benefit statements, loan origination documents, liens, deeds, titles, court documents, and tax documents[2].

 d. In addition to requiring production of documents that pertain to the firm's representation of the debtor, the Bankruptcy Court's order has also ordered materials that do not pertain to the debtor. For example, the Bankruptcy Court has ordered that the Firm produce internal training materials.

 e. Following the document production, the UST has taken Rule 2004 examinations in several cases, for a current total of nine examinations. The UST is proceeding to take additional examinations that have been ordered, and despite already having sought to take more than 90 examinations, she continues to file motions seeking additional Rule 2004 Examinations.

7. As reflected in the Motion to Withdraw the Reference, the Bankruptcy Court has modified the case closure process for each of the 36 cases at issue. Despite the fact that the Chapter 7 Trustee issued final reports in each of these cases without any objection from the UST, the Bankruptcy Court has not closed these cases. Even after UpRight Law and its clients filed motions

---

[2] The facts, financial profile, and debt profile of each case are different. In theory, every case will have some combination of the documents listed, but most cases will not have all of these documents.

to close these cases, the Bankruptcy Court refused to do so based on the existence of the investigations that it had directed the UST to undertake.

8. Neither I, nor anyone else at UpRight Law with whom I have spoken, is aware of any other law firm that files Chapter 7 bankruptcies in the Southern District of Illinois that has been required to undergo these procedures that I have described above in paragraphs 3-7. For example, I am not aware of any other law firm in the Southern District of Illinois that has routinely been the recipient of Notices for dozens of cases. Nor am I aware of any other law firm in the Southern District of Illinois that has been the target of a Bankruptcy Court-directed investigation into the firm's fees and procedures that spans dozens of cases. Moreover, I do not know of any law firm in the Southern District of Illinois that has been required to have its attorneys, employees, and clients subjected to Rule 2004 examinations that are sought in furtherance of such an investigation. I am also unaware of any other law firm that has had the case closure process modified by the Bankruptcy Court to enable investigations of a law directed by the Bankruptcy Court to continue to proceed in the context of that bankruptcy case.

9. These procedures, and the delays caused by them, have been prejudicial to the debtors and the Firm in these cases.

10. With respect to the debtors, in addition to the stress and anxiety caused by quasi-litigation of which the debtors' have no control, keeping these cases open for an extended period has an adverse financial impact upon the debtors.

11. The debtors' credit scores are being depressed by the cases remaining open. Depressed credit scores cause increased costs associated with the acquisition of new credit in the form of higher interest rates, and in many cases, increased origination costs.

12. Many debtors may not be able to obtain credit at all for certain kinds of loans. For example, it is the norm for many mortgagees to decline to offer mortgages to anyone who had an open bankruptcy case in the three years prior to their mortgage application. Because the three-year period does not begin until the case is closed, these clients cannot currently know when they are likely to be able to begin the home buying or refinancing process. As Exhibit A reflects, the time period at issue in a number of these cases has been significant and has meaningfully delayed the running of that three-year time period.

13. Additionally, the existence of an open bankruptcy can potentially affect debtors' employment opportunities. Many employers, including the largest employer in the country (the government of the United States), limit one's eligibility for certain positions or promotion based on the recency of having filed for bankruptcy relief.

14. These procedures have also been prejudicial to UpRight Law. The time and costs associated with the responding to the procedures described above in paragraphs 3-7 have been substantial and already have exceeded the *gross revenue* collectively earned in the cases in which Notices have been issued, to say nothing of the thin anticipated profit margins. With respect to the 36 cases at issue in the Motions to close, the fees at issue in these cases ranged from $1,050 to $1775 for a collective total of $53,925. For the 53 cases in which UpRight Law has already received Notices, the collective amount of attorney fees received in each of these cases amounts to approximately $79,015. Yet, as explained below, UpRight Law already has incurred direct,

measurable[3] costs of **$89,674** related only to the Notices and the actions undertaken responsive to the Notices, which accounts for only a portion of the true costs[4] of these cases.

15.  With respect to the direct and measurable costs of $89,674, it consists of only three components: (a) the attorney time of Charles Armgardt; (b) the expenses associated with travel to various status hearings and Rule 2004 Examinations; and (c) the transcript costs associated with hearings and the Rule 2004 Examinations that the UST has already taken.

16.  First, with respect to attorney time, the 53 investigations have imposed a staggering amount of legal work on the firm. Dating back to 2018, the majority of the hours have been performed by in-house counsel, but the firm eventually needed assistance to handle the large (and continuously growing) volume of work that these investigations are imposing upon the Firm.

17.  The Firm engaged Charles Armgardt to assist with these matters on an hourly basis beginning in February 2020. In 2020 alone, to date, Mr. Armgardt has invoiced[5] UpRight Law the

---

[3] UpRight Law's in-house counsel and its non-attorney litigation staff does not, as a matter of course, track its time. However, it is clear that the collective efforts of those in-house counsel and staff amount to hundreds of hours of work. The 53 cases in which notices have been issued would only require 3.8 hours each to eclipse 200 hours, collectively. Inclusive of hearings, document production, motions, responsive pleadings, research, and organizational tasks, I estimate the per-case time requirements to be much higher than that. None of that time has been tracked or included in the analysis culminating in the figure of $89,674.

[4] While creating a true accounting of the time committed to these matters by in-house counsel and non-attorney staff is no longer possible, a reasonably conservative estimate would be at least 3 hours per case of paralegal time and 5 hours per case of attorney time, with certain drafting events, in-person appearances, and telephonic appearances requiring an aggregate of, approximately, an additional 240 hours. Assuming billing rates of $95 per hour for paralegal time and $175 per hour for attorney time, paralegals would account for an additional $15,105 and attorneys would account for an additional $88,375. If added to the direct measurable costs outlined herein, the aggregate would be $193,154.

[5] The October 1, 2020 invoice has not yet been received. The figure came from contacting Mr. Armgardt and asking him to provide me with his billings for the month of September up to the point of this being written.

following amounts in the following months related only to work performed on these Southern District of Illinois matters:

    a. February 26, 2020 - $5,547.50 – 31.7 hours

    b. March 12, 2020 - $10,272.50 – 58.7 hours

    c. April 1, 2020 - $3,920.00 – 22.4 hours

    d. April 20, 2020 - $5,950.00 – 34.0 hours

    e. May 5, 2020 - $4,200.00 – 24 hours

    f. June 1, 2020 - $4,690.00 – 26.8 hours

    g. July 3, 2020 - $9,502.50 – 54.3 hours

    h. August 3, 2020 - $9,765.00 – 55.8 hours

    i. September 1, 2020 – 11,532.50 – 65.9 hours

    j. October 1, 2020 - $15,522.50 – 88.7 hours

    **k. TOTAL - $80,902.50 – 462.3 hours**

18. Because the firm does not track time for its in-house counsel and staff for the work done in connection with these investigations, it is not able to quantify the cost that the firm incurred in connection with the time devoted to these matters by those people with specificity. These matters have also imposed significant burdens on the firm's partners, Ron Buch and James Ford, who have had to devote substantial amounts of time relating to these investigations. If calculable with precision, all of these costs would be in addition to the figure of $89,674.

19. In terms of the nature of the work that has been performed in these matters, it has included (but not been limited to): (a) participation in (and in some cases travel to) status hearings relating to these investigations; (b) document production in connection with dozens upon dozens of cases; (c) defending and preparing for Rule 2004 Examinations; (d) preparing objections to

more than 90 Rule 2004 Examinations; (e) communicating and corresponding with the firm's clients and outside counsel; and (f) researching and preparing motions to close in 39 cases (three of which were granted). Given the sheer number of investigations, the associated burdens and expenses have been very significant.

20. The Firm also has incurred travel and administrative expenses as a result of these investigations. With respect to travel expenses, prior to the onset of the Covid-19 pandemic, UpRight Law's counsel generally travelled to Benton and East St. Louis to attend the hearings and represent the firm, and to attend Rule 2004 examinations. In 2019, the firm incurred travel expenses of at least $2,795.24. To date in 2020, the firm has incurred $1,555.61 in travel expenses.

21. In order to follow the Court's many oral orders and submit responsive documents and motions, and to obtain copies of the Rule 2004 Examinations have been taken, the Firm has incurred the costs of obtaining transcripts for at least 20 hearings and 2004 examinations at a cost of $4,420.65.

22. Accordingly, for only the outside counsel fees, travel expenses, and transcripts, UpRight Law has incurred at least $89,674. Accordingly, the direct, quantifiable costs for just the investigations has already eclipsed the total amounts earned and collected for the entire group of cases at issue in these investigations.

23. The costs for these matters continue to grow. The majority of the Rule 2004 Examinations that have been authorized have not yet been taken place. More Notices have recently been issued, but the associated status hearings have not yet occurred. Because of these facts, the full measure of the costs of just those actions already taken by the Court and the UST have not been realized. Additionally, the Bankruptcy Court continues to issue Notices on new Chapter 7 cases that the firm files in the Southern District of Illinois. The UST continues to move for more

2004 examinations and the Bankruptcy Court continues to grant them. If these procedures continue unabated, the firm's clients will continue to suffer prejudice as a result of these procedures, and the firm will incur significantly more amounts of expense and disruption.

24. UpRight Law has not charged a single client for the costs associated with defending their interests in these investigations even though the Court and the UST have at times maintained that the investigations are actually about the value of the bankruptcy estates in these cases. Accordingly, the revenue for these cases is fixed while the costs already have far exceeded the revenues and continue to grow.

25. UpRight Law incurs costs for operating a bankruptcy law firm, like any other firm. Marketing, overhead, payroll, and the costs associated with delivering the legal services already account for the large majority of revenue on any given case, even without investigations and contested matters. With respect to the 36 cases at issue in the Motions to Close, where the firm has obtained a discharge on behalf of these clients, the firm already has incurred substantial losses because of the investigatory procedures imposed upon it by the Bankruptcy Court and the UST. Unless curtailed, any case in which the Firm is the subject of an investigation through the procedures employed in these cases will eventually cause the Firm to lose money on that representation.

26. In light of the circumstances described above, and the injuries that these procedures have imposed on the firm and its clients, the Firm has stopped accepting new Chapter 7 clients in the Southern District of Illinois. I am confident that if other consumer bankruptcy law firms had to endure these procedures, no law firm could sustain an economically rational business.

SIGNATURE ON FOLLOWING PAGE

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 30, 2020          By: _____
                                              Ryan M. Galloway